<u>NOT FOR PUBLICATION</u>

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| **HUMPHREY O. UDDOH,** | |
| **Plaintiff,** | **Civil Action No. 12-419 (ES)** |
| **v.** | **OPINION** |
| **SELECTIVE INSURANCE COMPANY OF AMERICA,** | |
| **Defendant.** | |

**SALAS, DISTRICT JUDGE**

This matter comes before the Court on Defendant Selective Insurance Company of America's motion for summary judgment, (D.E. No. 57), and pro se Plaintiff Humphrey O. Uddoh's[1] cross-motion for summary judgment, (D.E. No. 58).  The Court has considered the parties' submissions and decides the motions without oral argument pursuant to Federal Rule of Civil Procedure 78(b).  Based on the reasons discussed below, Defendant's motion for summary judgment is hereby GRANTED and Plaintiff's motion for summary judgment is hereby DENIED.  The Court dismisses the case without prejudice.

---

[1] Although Plaintiff Humphrey O. Uddoh is appearing pro se, the record indicates that he holds a law degree and is a licensed attorney. (*See* D.E. No. 40 at 3; D.E. No. 50 at 1; D.E. No. 63 at 5).

## I.      FACTUAL BACKGROUND & PROCEDURAL HISTORY[2]

Plaintiff Humphrey O. Uddoh owns property located at 282 ½ 6th Street, Jersey City, New Jersey, 07302 (the "Property").  (D.E. No. 57-1, Defendant's Memorandum of Law in Support of Motion for Summary Judgment ("Def. Mov. Br.") at 3).  Defendant Selective Insurance Company of America issued Plaintiff a flood insurance policy for the Property pursuant to the Standard Flood Insurance Policy ("SFIP") codified in 44 C.F.R. Pt. 61, App. A(1).  (*Id.*).  In 2010, Plaintiff filed suit against Defendant seeking damages for flood losses that occurred on February 28, 2009, November 8, 2009, and March 14, 2010.  (*Id.*).

Judge William J. Martini of the United States District Court for the District of New Jersey dismissed Plaintiff's first lawsuit with prejudice.  In pertinent part, Judge Martini found that Plaintiff did not strictly comply with the conditions precedent to payment set forth in the SFIP because he failed to timely file proof of loss.  *Uddoh v. Selective Ins. Co. of Am.*, No. 10–1804, 2012 WL 2979051, at *3 (D.N.J. July 20, 2012).  Judge Martini also held that Plaintiff's state law claims were preempted by the National Flood Insurance Act of 1968.  *Id.*

Following a lapse in the previous policy, Defendant issued Plaintiff another flood insurance policy for the Property, with effective coverage dates from November 11, 2010 to November 11, 2011, pursuant to the terms codified in the SFIP.  (Def. Mov. Br. at 3).  Plaintiff made two claims pursuant to this policy for damage that allegedly occurred on August 9, 2011 and August 27, 2011.  (D.E. No. 58, Plaintiff's Cross Motion for Summary Judgment, ("Pl.

---

[2] The facts in this section have been collectively gathered from the parties' submissions.  Neither party properly complied with Local Rule of Civil Procedure 56.1, which requires the party filing a summary judgment motion to furnish a Statement of Material Facts Not in Dispute in a separate document, not as part of the brief.  L. Civ. R. 56.1.  Moreover, Rule 56.1 directs the nonmoving party to submit a responsive statement with his opposition papers.  *Id.*  Defendant's Statement of Material Facts Not in Dispute appears within its brief, rather than in a separate document.  (*See* D.E. No. 57-1).  Furthermore, Plaintiff did not submit a responsive statement until he submitted his reply brief for his cross-motion for summary judgment. (*See* D.E. No. 66).  Nevertheless, based on the documents submitted in support of the instant motions, the Court can clearly ascertain which facts are undisputed.

Opp. Br.") ¶ i).  In support of each claim, Plaintiff mailed Defendant a proof of loss submission. (Pl. Opp. Br. ¶¶ i, ii).

For his August 9, 2011 claim, it is undisputed that Plaintiff submitted the following documents: (1) a cover letter written and signed by Plaintiff that referenced an estimate of $6,250.00 in flood damage and an undocumented amount of $20,000.00 in structural damage[3]; (2) a construction estimate prepared by a third-party company for repairs totaling $6,250.00; (3) a proof of loss form[4] signed by Plaintiff; and (4) a report prepared by an independent adjuster. (D.E. No. 58-1, Ex. A).  Although Plaintiff signed and notarized the proof of loss form, Plaintiff states that the form was prepared by the independent adjuster who issued the report.  (D.E. No. 66, Plaintiff's Reply Brief in Further Support of Cross-Motion for Summary Judgment ("Pl. Reply Br.") ¶ 6).  The proof of loss form, based on the adjuster's report, estimated that the Property suffered $1,072.13 in flood damage.  (Ex. A).

For his August 27, 2011 claim, it is undisputed that Plaintiff submitted the following documents: (1) a cover letter written and signed by Plaintiff that referenced $15,000.00 in damage to his kitchen, $3,000.00 in clean-up costs, and $1,250.00 in replacement costs; (2) a proof of loss form signed by Plaintiff; (3) a report prepared by an independent adjuster; and (4) emails, photographs, and receipts.  (D.E. No. 58-2, Ex. B).  Similar to his August 9th claim, the proof of loss form, prepared by the adjuster in conjunction with the adjuster's report, estimated that the Property suffered $1,072.13 in flood damage.

---

[3] Plaintiff's submission for his August 9, 2011 claim did not include any documentation, adjustment evaluation, or estimate that substantiated his claim that the Property suffered $20,000 in structural damage.

[4] For the purposes of clarification, a proof of loss form is one manner in which an insured may submit proof of loss for flood damage.  *See* 44 C.F.R. Pt. 61, App A(1), Art. VII(J)(7).  Adjusters may provide insureds with a proof of loss form as a matter of courtesy only.  *Id.*  The onus remains on the insured to submit proof of loss, either by form or some other manner.

Both parties agree that Plaintiff submitted these documents in a timely fashion.[5]   (Pl. Opp. Br. ¶ xiv; Def. Mov. Br. at 9).   Plaintiff only signed the proof of loss forms and cover letters.   The record does not indicate that Plaintiff submitted any further documentation for his August 9th and August 27th claims.

As evidenced in both proof of loss forms, the independent adjusters assigned to evaluate Plaintiff's flood loss claims estimated that the Property suffered $1,072.13 in damage, which did not exceed Plaintiff's $5,000.00 deductible.   (Def. Mov. Br. at 4; *see* Ex. A, Ex. B). Because the estimated damage did not exceed the deductible, the Net Amount Claimed for each flood loss claim was $0.00.   (*See* Ex. A, Ex. B).   Plaintiff's cover letters contested these claims. (*Id.*).   According to Plaintiff, he suffered more than $1,072.13 in damage and believed that Defendant should reimburse him based upon the amount contained in the cover letters, not based upon the estimates contained in the proof of loss forms.   (Pl. Opp. Br. ¶ ii).   Defendant subsequently denied Plaintiff's claims based upon the estimate and information contained in the proof of loss forms.   (Def. Mov. Br. at 4).

On January 23, 2012, Plaintiff filed a civil action against Defendant alleging that Defendant breached the flood insurance policy by failing to cover his flood damage and re-rating the Property to a basement.   (D.E. No. 1, Complaint ("Compl.") ¶¶ 9, 10).[6]   Plaintiff also alleged New Jersey state law bad faith, consumer fraud, and estoppel causes of action.   (*Id.* ¶ 9). On February 7, 2012, Defendant filed its Answer to Plaintiff's Complaint.   (D.E. No. 3, Answer to Complaint).

Following discovery, on May 23, 2014, Defendant filed the instant motion for summary judgment.   (D.E. No. 57).   Defendant argues that because Plaintiff failed to comply with the

---

[5] For the August 27, 2011 claim, the Federal Emergency Management Agency extended the normal sixty-day deadline for submitting proof of loss.
[6] Plaintiff's Complaint was incomplete. Paragraphs 2–8 were missing.

proof of loss requirements for the amounts he seeks in damages, he did not meet the conditions precedent to bringing suit.  Accordingly, Defendant argues that summary judgment must be entered in its favor.  (Def. Mov. Br. at 11).  Essentially, Defendant believes that the only proof of loss that Plaintiff properly filed were the proof of loss forms for the $1,072.13 in flood damage, which did not result in a payment to Plaintiff because the damages did not exceed his deductible.  (Def. Mov. Br. at 9).  On June 2, 2014, Plaintiff filed an opposition and a cross-motion for summary judgment.  (D.E. No. 58).  In his cross-motion, Plaintiff seeks an order of declaratory judgment stating that Defendant intentionally and deliberately interfered with the adjustment process of his two claims.  (Pl. Opp. Br. ¶ a).  The parties' motions are now ripe for adjudication.

## II.    LEGAL STANDARD

A court shall grant summary judgment under Rule 56 of the Federal Rules of Civil Procedure, "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  The mere existence of an alleged disputed fact is not enough.  Rather, the opposing party must prove that there is a genuine issue of a material fact.  *Id.*

An issue of material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.* at 248.  A fact is material if under the governing substantive law, a dispute about the fact might affect the outcome of the lawsuit.  *Id.*  Factual disputes that are irrelevant or unnecessary will not preclude summary judgment.  *Id.*

On a summary judgment motion, the moving party must first show that no genuine issue of material fact exists.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The burden then

5

shifts to the nonmoving party to present evidence that a genuine issue of material fact compels a trial.  *Id.* at 324.  To meet its burden, the nonmoving party must offer specific facts that establish a genuine issue of material fact, not just "some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).  Thus, the nonmoving party cannot rely on unsupported assertions, bare allegations, or speculation to defeat summary judgment.  *See Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.*, 172 F.3d 238, 252 (3d Cir. 1999).  The Court must, however, consider all facts and their reasonable inferences in the light most favorable to the nonmoving party.  *See Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995).

## III.    DISCUSSION

### A.    National Flood Insurance Program

The National Flood Insurance Act of 1968, 42 U.S.C. §§ 4001–4129, established the National Flood Insurance Program ("NFIP").  The NFIP is a federal insurance program that is administered by the Federal Emergency Management Agency ("FEMA").  *See* 44 C.F.R. §§ 59.1–77.2.

Pursuant to its authority granted under the NFIP, FEMA created a "Write-Your-Own" ("WYO") program where private insurance companies write their own flood insurance policies. 44 C.F.R. Pt. 62, App. A.  Although FEMA allows WYO companies to write their own policies, the terms and conditions of the policies must comply with the SFIP codified in 44 C.F.R. Pt. 61, App. A.  *See Suopys v. Omaha Property & Cas.*, 404 F.3d 805, 807 (3d Cir. 2005).  A WYO carrier is not allowed to modify, alter, or amend the terms and conditions of the SFIP without the express written consent of the Federal Insurance Administrator.  44 C.F.R. Pt. 61, App. A(1), Art. VII(D); *see Suopys*, 404 F.3d at 807.  The United States Treasury underwrites the

NFIP, and all flood loss claims that WYO companies issue are paid directly with Treasury funds.  44 C.F.R. Pt. 62, App. A(1).

Because the U.S. Treasury underwrites all claims paid by WYO companies, strict adherence to the terms and conditions set forth by FEMA is required.  *Federal Crop. Ins. Corp. v. Merrill,* 332 U.S. 380, 384 (1947); *see e.g.*, *Suopys*, 404 F.3d 805, 809 (3d Cir. 2005) ("Because any claim paid by a WYO Company is a direct charge to the United States Treasury, strict adherence to the conditions precedent to payment is required."); *DeCosta v. Allstate Ins. Co.*, 730 F.3d 76, 83 (1st Cir. 2013) (reiterating its holding that "federal law mandates strict compliance with the SFIP"); *Flick v. Liberty Mutual*, 205 F.3d 386, 394 (9th Cir. 2000) ("[A] claimant under a standard flood insurance policy must comply strictly with the terms and conditions that Congress has established for payment.").  The SFIP sets forth the following terms and conditions in case of a flood loss:

> Within 60 days of loss, send us proof of loss, which is your statement of the amount you are claiming under the policy signed and sworn by you . . . with the following information:
> (a) The date and time of loss;
> (b) A brief explanation of how the loss happened;
> . . .
> (f) Specifications of damaged buildings and detailed repair estimates;
> . . .
> (i) The inventory of damaged personal property . . . .

44 C.F.R. Pt. 61, App. A(1), Art. VII(J)(4).    Furthermore, an insured must "[p]repare an inventory of damaged property showing the quantity, description, actual cash value, and amount of loss . . . [and] [a]ttach all bills, receipts, and related documents." *Id.* at Art. VII(J)(3).  Insurance adjusters may furnish the insured with a proof of loss form as a courtesy only, but the onus remains on the insured to timely submit proof of loss.  *See Id.* at Art. VII(J)(7); *see also*

*Suopys*, 404 F.3d at 810.  Strictly construed, the SFIP clearly requires an insured to submit proof of loss within sixty days of the claimed flood loss.  *Suopys*, 404 F.3d at 810.

Since strict adherence to the SFIP is required, filing proof of loss is a condition precedent to bringing suit under the statute.  The SFIP states that "[y]ou may not sue us to recover money under this policy unless you have complied with all the requirements of the policy."  44 C.F.R. Pt. 61, App. A(1), Art. VII(R).  Thus, an insured's failure to submit proof of loss for the money he seeks to recover in damages bars recovery.  *Suopys*, 404 F.3d at 810 ("Thus, we join a number of other Courts of Appeals in holding that strict adherence to SFIP proof of loss provisions . . . is a prerequisite to recovery under the SFIP."); *see also DeCosta*, 730 F.3d at 82; *Dickson v. Am. Bankers Ins. Co. of Florida*, 739 F.3d 397 (8th Cir. 2014).

### B.      Breach of Standard Flood Insurance Policy

With these principles in mind, the Court turns to the parties' arguments.  Defendant claims that it is entitled to summary judgment because Plaintiff failed to provide proper proof of loss for the amount in damages he now seeks.  (Def. Mov. Br. at 11).  Plaintiff contends that his statement of the amount he is claiming under the policy does not have to be contained within the proof of loss form.  (Pl. Opp. Br. ¶ xv).  According to Plaintiff, an insured can include his statement in additional documents attached to the proof of loss form.  (*Id.*).  The parties agree that the two signed proof of loss forms and the adjusters' reports that the Property suffered $1,072.13 in damage were timely filed.  (Def. Mov. Br. at 4; Pl. Opp. Br. ¶ i).  Rather, the dispute arises from the supplemental claims Plaintiff asserts in his cover letters.  Thus, the Court will address whether Plaintiff's cover letters and accompanying documents comply with the SFIP requirements.

8

*1. August 9, 2011 Claim*

In support of his opposition to Defendant's motion, Plaintiff filed a copy of the materials he submitted to Defendant as his proof of loss for the two claims.  (Ex. A; Ex. B).  For his August 9th claim, Plaintiff submitted:  (1) a signed cover letter; (2) a construction estimate; (3) a signed and notarized proof of loss form; and (4) an independent adjuster's report of the flood damage.  (Ex. A).  Plaintiff contended in his cover letter that the Property suffered $26,250.00 in damage, rather than the $1,072.13 reported on the proof of loss form and adjuster's report.[7] (*See id.*).  In his cover letter, Plaintiff states: "I have enclosed a copy of my actual damage sustained during this flood incident totaling $6250, not including structural damage to my home totaling about Twenty-Thousand Dollars ($20,00.00)."  (*Id.*).

Even if the Court were to accept Plaintiff's cover letter as a form of proof of loss, it still fails to comply with the requirements under the SFIP.  First, the Court doubts whether the letter was sworn.  The SFIP requires the insured to provide a "signed and sworn" proof of loss.  44 C.F.R. Pt. 61, App. (A)(1), Art. VII(J)(4).  Although the SFIP does not define the term sworn, many courts have interpreted it to require notarization or something beyond just a signature. *See Mancini v. Redland Ins. Co.,* 248 F.3d 729, 735 (8th Cir. 2001) (holding that even if the plaintiffs' printed names qualified as signatures, the fax transmittal was not sworn); *Debartolo v. Capitol Preferred Ins. Co.,* No. 13-01695, 2014 WL 5307493, at *3 (M.D. Fla. Oct. 16, 2014) (finding that "'sworn' requires notarization and a signature does not suffice"); *McKee v. USAA Ins. Agency, Inc.,* No. 06-156, 2007 WL 1229107, at *3 (N.D. Fla. Apr. 26, 2007) (denying the

---

[7] The Court notes that the figures in Plaintiff's brief and the figures in Plaintiff's exhibits are not the same.  In his opposition brief, Plaintiff contends that the Property suffered $36,915.83 in damages, but the cover letter he submitted for his August 9th claim only states $26,250.00 in damage.   Furthermore, Plaintiff's reply brief asserts $36,250.00 in damage for the August 9th claim.  Because the parties do not dispute that the materials attached in Plaintiff's Exhibit A were the documents submitted in furtherance of Plaintiff's August 9th claim, the Court will defer to the figures contained therein.

plaintiff's letter as proof of loss for "lacking an insured's signature *and* not being sworn" (emphasis added)).   There is no doubt that the proof of loss form Plaintiff submitted for $1,072.13 in damage was signed and sworn because the form bears Plaintiff's signature and it was notarized.   However, Plaintiff's cover letter seeking an additional $26,250.00 was only signed, not notarized.   Therefore, the Court finds that the cover letter was not sworn.

Second, even if the Court were to consider Plaintiff's signature as sufficient proof that the letter was sworn, he has still failed to comply with the remaining proof of loss requirements. Insureds are not required to submit every bill, receipt, and related document to an insurer. However, they must submit enough support so that an insurer can evaluate their claim.   *See Forman v. Fed. Emergency Mgmt. Agency*, 138 F.3d 543, 545 (5th Cir. 1998); *Sun Ray Vill. Owners Ass'n v. Old Dominion Ins. Co.,* 546 F. Supp. 2d 1283, 1291 (N.D. Fla. 2008).   The onus remains on the insured to provide proof of loss.   *See* 44 C.F.R. Pt. 61, App. A(1), Art. VII(J)(7).   Plaintiff did not submit any estimates or reports documenting structural damage in the amount of $20,000.00, thus making it impossible for Defendant to evaluate his claim for $20,000.00.   Furthermore, the only report Plaintiff submitted in furtherance of his claim for $6,250.00 was a one-page construction estimate for repairs completed by J.P. New Construction.   (Ex. A).   The only information contained on the estimate is as follows: "[r]eplace backyard drain and reset brick paver patio . . . [r]eplace broken floor tiles on ground floor kitchen."  (Ex. A).

Moreover, the independent adjuster's report that was submitted with the proof of loss form undermines the repair estimate for $6,250.00.   In the report, the adjuster stated that it was unclear whether the damage to the kitchen floor tiles was the result of the flood.   (Ex. A). Furthermore, the adjuster stated that coverage was not applicable to the patio.   (Ex. A); *see also*

44 C.F.R. Pt. 61, App. A(1), Art. IV(9) (listing patios as property not covered under the SFIP). The proof of loss form that Plaintiff properly submitted seemingly excluded the damage that Plaintiff was asserting in his cover letter and that was documented in the repair estimate. However, he failed to provide proper support to contradict the adjuster's exclusion of this damage.  Accordingly, the adjuster's report highlights the fact that the repair estimate does not support Plaintiff's claim for damages.

Even more so, the repair estimate that Plaintiff submitted in furtherance of his claim for $6,250.00 cannot be considered a detailed repair estimate within the meaning of Article VII(J) of the SFIP.  The estimate is completely devoid of any details as to how the damage occurred, whether the damage was caused by the flood (which the adjuster's report questioned), and how much of the $6,250.00 was attributed to each repair.

Because Plaintiff failed to provide any support for his $20,000.00 claim, and failed to provide detailed support for his $6,250.00 claim, Plaintiff has not met the conditions precedent necessary to sue for these amounts.  Thus, Defendant is entitled to summary judgment.  *See Markey v. Louisiana Citizens Fair Plan,* No. 06-5473, 2009 WL 23858, at *3 (E.D. La. Jan. 5, 2009) (granting summary judgment for the defendant insurance company because it "did not receive any specifications of damaged buildings or detailed repair estimates, invoices, receipts any other supporting documentation to substantiate the Proof of Loss"); *Otallah v. State Farm Fire and Cas. Co.,* 2008 WL 3539667, at *4 (E.D.La. July 31, 2008) (granting summary judgment because "[t]here was no verifying documentation provided in conjunction with the POL, and the POL form by itself is insufficient to meet the burden imposed on insureds by the SFIP regulations").

11

### 2. August 27, 2011 Claim

For his August 27th claim, Plaintiff submitted: (1) a signed cover letter; (2) a signed and notarized proof of loss form; (3) emails containing price quotes for kitchen countertops and cabinetry; and (4) blurred photographs and receipts. (Ex. B). In his cover letter, Plaintiff states, "the total damage caused to the subject premises is . . . $19,250." (Ex. A). The cover letter also references a structural engineer's report that was not included in the submission itself. (*See* Ex. A; D.E. No. 58-4, Ex. D).

The Court grants Defendant summary judgment for the same reasons outlined above. Again, even if the Court were to accept the signed cover letter as a sworn document, the letter still fails to comply with Article VII(J) of the SFIP because Plaintiff did not provide any support for the loss claimed in the letter. Although Plaintiff's letter references an engineer's report, the report was not included in Plaintiff's submission, nor does the report include a detailed repair estimate pursuant to Article VII(J). Because Plaintiff failed to provide *any* support for his claim, including a detailed repair estimate, he did not comply with the SFIP's proof of loss requirement. Thus, he is barred from recovery and Defendant is entitled to summary judgment.[8] *See* Otallah, *2008* WL 3539667, at *4 (granting summary judgment because "[t]here was no verifying documentation provided in conjunction with the POL").

### C. Plaintiff's Breach of Contract Claim for Re-Rating of Basement & State Law Causes of Action

In addition to his claim that Defendant breached the SFIP by failing to reimburse him for the damage caused to the Property following floods, Plaintiff asserts a claim of estoppel and alleges that Defendant breached the SFIP because the insurer re-rated the Property to a

---

[8] The Court notes that Plaintiff also submitted receipts for the refrigerator and dryer that he allegedly replaced. (Ex. B). Even if the Court found that Plaintiff was entitled to reimbursement for these appliances, Plaintiff still has not met his $5,000 deductible.

basement, acted in bad faith, violated the New Jersey Consumer Fraud Act, and engaged in fraud.    (Compl. ¶ 9).  Defendant addresses Plaintiff's re-rating claim by arguing that Judge Martini already adjudicated the issue in the first lawsuit between the parties.  (Def. Mov. Br. at 12).  Defendant also contends that federal law preempts Plaintiff's remaining state law causes of action. (Def. Mov. Br. at 18).

In his opposition and reply briefs, Plaintiff failed to address Defendant's arguments regarding the re-rating claim and state law causes of action.  The Court deems these claims to be abandoned as a result.  *See Angle v. United States,* No. 12–2495, 2012 WL 6708165, at *3 (D.N.J. Dec. 21, 2012) ("the Court construes Plaintiffs' silence as abandonment of those claims"); *Cicchiello v. Beard*, 726 F. Supp. 2d 522, 531 (M.D. Pa. 2010) ("Plaintiff's failure to address  this claim in her  brief  in opposition constitutes  an  abandonment  of  the claim."). Because Plaintiff has abandoned these claims, Defendant is entitled to summary judgment on Plaintiff's re-rating claim and remaining state law causes of action.

### D.    Plaintiff's Cross-Motion for Summary Judgment

In his cross-motion for summary judgment, Plaintiff seeks a declaratory judgment ruling that Defendant breached the SFIP and violated FEMA guidelines and NFIP rules by interfering with the adjustment process of his flood claims.  (Pl. Opp. Br. ¶ a).  According to Plaintiff, Defendant interfered with  the independent adjuster process by impermissibly imparting information on the independent adjusters, micromanaging them, and working directly with them to reach a mutual evaluation.  (*Id.* ¶¶ xxix, xxxi, xxxv).

Under the Declaratory Judgment Act ("DJA"), "any court of the United States . . . may declare the rights and other legal relations of any interested party."  28 U.S.C. § 2201.  The DJA "confers a 'unique and substantial discretion' on federal courts to determine whether to declare

litigants' rights." *Reifer v. Westport Ins. Corp.*, 751 F.3d 129, 139 (3d Cir. 2014) (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995)).   Accordingly, district courts are authorized to exercise their discretion when deciding whether to stay or dismiss an action seeking declaratory judgment. *Id.*

The Third Circuit has enumerated a non-exhaustive list of factors for district courts to consider when making this determination. The four general factors for a district court to consider are: (1) the likelihood that a federal declaration will resolve the uncertainty of obligation which gave rise to the controversy; (2) the convenience of the parties; (3) the public interest in the declaration; and (4) the availability and relative convenience of other remedies. *Id.* at 140.   In the insurance context, district courts are also instructed to consider the following factors: "(1) general policy of restraint when the same issues are pending in a state court; (2) an inherent conflict of interest between an insurer's duty to defend in a state court and its attempt to characterize that suit in federal court as falling within the scope of a policy exclusion; [and] (3) avoidance of duplicative litigation." *Id.*

Based upon the factors enumerated by the Third Circuit, the Court decides to exercise jurisdiction over Plaintiff's declaratory judgment claim.  The Court is unaware of any action between the parties pending in state court.  Therefore, there is no concern about duplicative litigation, nor does Defendant have a conflict regarding its duty to defend.  Moreover, a federal declaration would resolve the uncertainty between the parties, and there is no other remedy available.

However, the Court denies Plaintiff's declaratory judgment claim because he has failed to establish that he is entitled to relief.   In furtherance of his declaratory judgment claim, Plaintiff argues that "there is no justification in the case law decisions . . . enabling Selective to

micro-manage the Adjuster(s) during the claims administration/adjustment process."  (Pl. Opp. Br. ¶ xxxviii).  Moreover, Plaintiff argues that Defendant "is indeed not required to do anything in so far as overseeing and/or micro-managing the independent adjusters . . . there is no mandatory language in this statute at all."  (*Id.* ¶ xxxv).  In response, Defendant contends that the declaratory judgment claim is redundant because the results of the breach of contract claim will resolve the declaratory judgment issue.  (D.E. No. 63, Defendant's Reply Brief in Further Support of Motion for Summary Judgment at 5).

The Court agrees that the facts underlying Plaintiff's declaratory judgment claim are similar to the facts asserted in Plaintiff's breach of contract claims.  However, even if the Court considers Plaintiff's declaratory judgment claim separately from his breach of contract claims, Plaintiff's declaratory judgment claim fails because he has not established that he is entitled to relief under the SFIP, the NFIP, or FEMA guidelines.  While Plaintiff argues that there is no legal support for Defendant's actions, the absence of law does not mean that an action is illegal.  Defendant has not pointed the Court to any law, case, or guideline that clearly prohibits Defendant's conduct.  As such, Plaintiff has failed to meet his burden of establishing that Defendant's actions were impermissible under the SFIP, the NFIP, or FEMA guidelines.  Accordingly, the Court denies Plaintiff's cross-motion for summary judgment.

## IV.    CONCLUSION

For the reasons stated above, Defendant's motion for summary judgment is GRANTED and Plaintiff's cross-motion for summary judgment is DENIED.  An appropriate Order shall accompany this Opinion.

/s/Esther Salas
**Esther Salas, U.S.D.J.**

15